AO 106 (Rev. 04/10) Application for a Search Warrant (Modified, WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   MJ19-456
2 Vehicles (1) Black 2006 Ford Mustang (2) Silver )
2010 Audi A6, more fully described in Attachment A )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
2 Vehicles (1) Black 2006 Ford Mustang (2) Silver 2010 , more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 | Felon in Possession of a Firearm |
| 21 U.S.C. §§ 841 & 846 | Drug Trafficking & Conspiracy |

The application is based on these facts:
✓ See Affidavit of Scott McCarthy, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Scott McCarthy, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   09/27/2019

*Judge's signature*

City and state:  Seattle, Washington       Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO: 2019R00897

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

a. A black 2006 Ford Mustang, **Washington license plate number: BPM8604 and VIN: 1ZVHT82H565201428**. According to the Washington Department of Licensing (DOL) the **black Mustang** is registered to Donald Christopher SCHOLOFF at 900 SW Holden St, APT 106, Seattle, Washington.

b. A silver 2010 Audi A6, **Washington license plate number: BPY4977 and VIN: WAUFGAFB4AN064905**. According to the Washington Department of Licensing (DOL) the **silver Audi** is registered to Donald Christopher SCHOLOFF at 900 SW Holden St, APT 106, Seattle, Washington.

**Attachment B**

List of Items to be Searched for and Seized

This warrant authorizes the government to search for and seize the following items:

Evidence and/or fruits of the commission of the following crimes: Distribution of, and possession with intent to distribute controlled substances, and conspiracy to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), and 846; Felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g), as follows:

1. **Controlled Substances**: Including but not limited to cocaine, cocaine base in the form of crack cocaine, heroin, oxycodone and/or other diverted prescription drugs, and methamphetamine.

2. **Drug Paraphernalia**: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3. **Drug Transaction Records**: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances, including such records stored in electronic format.

4. **Customer and Supplier Information**: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items, including such records stored in electronic format.

5. **Cash and Financial Records**: Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, including such records stored in electronic format; and money counters.

6. **Photographs/Surveillance**: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other

**Attachment B**

List of Items to be Searched for and Seized

contraband, weapons, and assets derived from the distribution of controlled substances, including such records stored in electronic format.

    7.    **Weapons**: Firearms, magazines, ammunition, and body armor, and other weapons-related items such as holsters and equipment to clean firearms.

    8.    **Codes**: Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

    9.    **Property Records**: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

    10.    **Indicia of occupancy**, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

    11.    **Evidence of Storage Unit Rental or Access**: rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords, or other documents relating to storage units.

    12.    **Evidence of Personal Property Ownership**: Registration information, ownership documents, or other evidence of ownership of personal property including, but not limited to, vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and other personal property; evidence of international or domestic travel, hotel/motel stays; and any other evidence of unexplained wealth.

    13.    **Individual and business financial books**, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

        a.    Employment records: paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

        b.    Savings accounts: statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

        c.    Checking accounts: statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

**Attachment B**

List of Items to be Searched for and Seized

        d.    Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

        e.    Collection accounts:  statements and other records.

        f.    Certificates of deposit:  applications, purchase documents, and statements of accounts.

        g.    Credit card accounts:  credit cards, monthly statements, and receipts of use.

        h.    Receipts and records related to gambling wins and losses, or any other contest winnings.

        i.    Insurance:  policies, statements, bills, and claim-related documents.

        j.    Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15. All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash. These documents are to include applications, payment records, money orders, frequent customer cards, etc.

16. Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

17. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18. Correspondence, papers, records, and any other items showing employment or lack of employment.

19. Telephone books, and/or address books, facsimile machines to include the other memory system, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for

**Attachment B**

List of Items to be Searched for and Seized

messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

      20.     Safes and locked storage containers, and the contents thereof that are otherwise described in this document.

      21.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close or conceal said compartments.

      22.     Cell Phones: Cellular telephones and other communications devices including smartphones (i.e., iPhones, Android phones, Blackberries, and the like) may be seized, and searched for the following items:

        a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

        b.     Stored list of recent received, sent, and missed calls;

        c.     Stored contact information;

        d.     Stored photographs of narcotics, currency, firearms, or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

        e.     Stored photographs of real estate, or other records pertaining to the purchase, sale, lease, or renovation of real property including any embedded GPS data associated with those photographs;

        f.     Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wikr, Telegram, Signal, WhatsApp, and similar messaging applications.

**AFFIDAVIT**

STATE OF WASHINGTON   )
                      )  ss
COUNTY OF KING        )

I, Scott McCarthy, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, having been duly sworn, state as follows:

**INTRODUCTION**

1. I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since April 2019. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. Prior to becoming a Special Agent with the DEA, I was employed as an Intelligence Officer in the United States Army from March 2013 to March 2019. In that capacity, I was responsible for performing intelligence collection management, surveillance and reconnaissance activities, and providing advice on the use of intelligence assets and resources to the military unit's senior commander. I was also responsible for assessing the risks associated with friendly/enemy courses of action, fusion of intelligence information from various intelligence concentrations (human intelligence, signals intelligence, geospatial intelligence, etc.), and acting to counter/neutralize intelligence threats.

2. This affidavit and warrant are being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

Affidavit of Special Agent McCarthy - 1
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of an application for a warrant authorizing the search of the following vehicles, as further described in Attachment A, for evidence, fruits and instrumentalities, as further described in Attachment B, of the crimes of felon in possession of a firearm, distribution of, and possession with intent to distribute, controlled substances, and conspiracy to commit these offenses by Donald C. SCHOLOFF in violation of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Sections 841(a)(1), and 846:

   a. A black 2006 Ford Mustang, **Washington license plate number: BPM8604 and VIN: 1ZVHT82H565201428**, hereinafter referred to as the **"black Mustang."** According to the Washington Department of Licensing (DOL) the **black Mustang** is registered to Donald Christopher SCHOLOFF at 900 SW Holden St, APT 106, Seattle, Washington.

   b. A silver 2010 Audi A6, **Washington license plate number: BPY4977 and VIN: WAUFGAFB4AN064905**, hereinafter referred to as the **"silver Audi."** According to the Washington Department of Licensing (DOL) the **silver Audi** is registered to Donald Christopher SCHOLOFF at 900 SW Holden St, APT 106, Seattle, Washington.

# SOURCES OF INFORMATION

4. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA. When I refer to registration records for vehicles, I am relying on records obtained from the Washington State Department of Licensing (DOL). Insofar as I have included event times in this affidavit, those event times are approximate.

5. Since this affidavit is being submitted for the limited purpose of obtaining authority to search the **black Mustang** and **silver Audi**, I have not included every fact

Affidavit of Special Agent McCarthy - 2
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

known concerning this investigation. I have set forth only the facts that I believe are essential for a fair determination of probable cause.

## PROBABLE CAUSE

*September 20, 2019 Seattle Police Arrest and Information*

6. On September 20, 2019, Seattle Police Department (Seattle PD) Patrol officers contacted a female (hereinafter "W.R.") crying on the side of the road near Second Ave SW. Officers noted that W.R.'s face appeared swollen. W.R. informed officers that her boyfriend, later identified as SCHOLOFF, had punched her in her face and ribs, and had attempted to strangle her. Officers noted that W.R. had visible marks on her neck consistent with her report. W.R. stated that SCHOLOFF kicked her out of their shared apartment and provided the address of 900 SW Holden, Unit 106, Seattle, Washington (hereinafter referred to as target residence). W.R. informed officers that she had left the target residence on a bicycle and stopped at a nearby parking lot. W.R. reported that while she was in the parking lot, SCHOLOFF appeared in his **black Mustang** and attempted to run her over. W.R. stated she was not struck by the vehicle, but that the bicycle she was riding had been run over and damaged. W.R. informed Seattle PD officers that a briefcase containing narcotics and a firearm was located at the SCHOLOFF'S residence.

7. Seattle PD officers established probable cause to arrest SCHOLOFF for assault. Officers went to the target residence. Upon their arrival, officers observed a **black Mustang** parked at the complex. Officers knocked on the front door of the target residence. SCHOLOFF answered the door of the target residence. Seattle PD officers immediately took SCHOLOFF into custody.

8. Following his arrest, SCHOLOFF was booked into the King County Correctional system. Investigators listened to inmate calls recorded by King County. Immediately after being arrested and gaining access to the telephone system at King County, SCHOLOFF began communicating with an associate. The following is a summary of the phone call.

Affidavit of Special Agent McCarthy - 3
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. SCHOLOFF informed an associate that he had been arrested for domestic violence, and the police had arrested him at his residence. SCHOLOFF explained the circumstances of the arrest and stated the victim told law enforcement about the gun. SCHOLOFF then stated he needed his associate to remove items from the target residence. Specifically, SCHOLOFF stated the following items needed to be removed from the residence: a silver case in the closet by the kitchen; a safe in the bedroom closet; a case located on or under the bed; and a pillow case located on the third shelf of a bedroom closet.

10. While in custody, inmates at the King County Jail are provided a pin number to use telephone services at the facility. The pin number is associated with the inmate's identity. Inmates place funds into an account so they can make calls. The King County Jail records these calls. At the beginning of a call, a recording advises that the call is subject to monitoring and recording and has instructions for attorneys to make unrecorded calls. The receiving party is given the opportunity to accept or reject the call.[1]

11. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I believe that during this call SCHOLOFF was directing his associate to gather contraband, possibly narcotics and/or guns, to prevent law enforcement or probation officers from gaining evidence of his drug trafficking activities, and to ensure the drugs and/or guns in his possession were gathered before law enforcement or probation officers can access them.

*September 21, 2019 Federal Search Warrant*

12. On or about September 21, 2019, the United States Probation Office provided a summary of the above information. Investigators received a copy of

---

[1] The advisement is as follows: "Hello this is a free call from" (inmate name) "an inmate at King County Correctional Facility. This call is from a correctional facility and is subject to monitoring and recording. If this call is being placed to an attorney, it should not be accepted unless the attorney name and number is on the do not record list. If an attorney name and number is not on the do not record list, this call will be recorded. If the attorney name and number is not on the do not record list, contact the jail immediately and have that attorney's name and number added to the attorney list. After the beep press one to accept this policy or press two and hang up."

Affidavit of Special Agent McCarthy - 4
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

SCHOLOFF's Judgment in 2:15CR00120JCC, and confirmed that SCHOLOFF was prohibited from possessing a firearm. Investigators also confirmed that a Special Condition of SCHOLOFF's federal supervision included, "The defendant shall submit his or her person, property, house, residence, storage unit, vehicle, papers . . . to a search conducted by a United States probation officer . . . based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision."

13. U.S. Probation indicated that they would likely be unable to conduct a probation search until the following week, perhaps as late as Tuesday, September 24, 2019. Fearing that any contraband may have been removed by SCHOLOFF's confederates by that time, Investigators began coordinating with the United States Probation Office, United States Attorney's Office, the Seattle Police Department, and the DEA Seattle Field Division for the execution of a search warrant at SCHOLOFF's residence. A search warrant was therefore obtained from Honorable Brian Tsuchida on September 21, 2019.

14. On September 21, 2019, investigators conducted the federal search warrant at SCHOLOFF'S residence at 900 SW Holden, Unit 106, Seattle, Washington. During the search, investigators located and seized approximately 1455.2g of methamphetamine (field test positive), approximately 53.8g of cocaine (field test positive), and approximately 41.7 g of suspected oxycodone pills and associated drug paraphernalia in a silver case. Investigators also located and seized approximately 229.5g of heroin (field test positive) in the kitchen freezer. Investigators also located and seized a loaded 9mm handgun in a pillowcase, $39,677.80 United States Currency in a safe, a title for the **black Mustang** registered to SCHOLOFF, and the **black Mustang** and **silver Audi.** The items seized during the search were located where SCHOLOFF described they would be in the aforementioned jail call. The items were transported to the Seattle Police Department Evidence Section and processed as evidence per Seattle Police Department policy.

Affidavit of Special Agent McCarthy - 5
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*September 23, 2019 K9 Sniff and Information on **Black Mustang** and **Silver Audi***

15. Based on the information and seizure detailed above, investigators requested DEA TFO Natalie Mounts and her K9 partner "Ginger" conduct a K9 "sniff" of the **black Mustang** and the **silver Audi**[2] On September 23, 2019, TFO Mounts applied K9 narcotics dog Ginger to the outside of the vehicles. K9 Ginger gave a positive indication for the presence of narcotics odor at the driver's side door seam of the **silver Audi**. Ginger also alerted at both door seams and the trunk of the **black Mustang**. I know from my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, that it is common for narcotics traffickers to utilize vehicles to both store and transport narcotics. Based on the indication from K9 Ginger and the facts stated herein I believe SCHOLOFF is using the **black Mustang** and the **silver Audi** to conduct and facilitate narcotics transactions.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

16. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

    a. During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings that show ownership, dominion, and control of vehicles, residences, and/or storage units.

    b. It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement.

---

[2] K9 Ginger and Detective Mounts, are currently certified as a Narcotics Detection Canine Team under Washington Administrative Code (WAC) 139.05.915. They were certified together under this WAC on November 10, 2018 after 292.5 hours of initial training. K9 Ginger is trained to alert on the odor of cocaine, crack cocaine, methamphetamine, heroin, and marijuana. K9 Ginger is a passive alert canine, which means she gives a sit response after locating the source area where the odor of narcotics is emitting. This sit response is accepted by current narcotics detection canine standards. The handler is trained to watch for changes of behavior (alert) the canine exhibits when an odor of narcotics is detected.

Affidavit of Special Agent McCarthy - 6
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.  Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. Narcotics traffickers commonly "front," that is, provide on consignment, controlled substances to their clients. These books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets," are maintained where traffickers have ready access to them.

d.  Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes and vehicles. Sometimes, these locations are not their primary residence, but instead used for the purposes of storing and distributing drugs.

e.  Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in books or papers as well as in cellular telephones and other electronic devices. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business. Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

f.  Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles. This evidence often includes more than contraband and paraphernalia and includes financial records, records of property and vehicle ownership, records of property rented, records of storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes. Narcotics traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property,

Affidavit of Special Agent McCarthy - 7
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and their illegal product, or have photo or video security systems that record images from their homes or property. These individuals usually maintain these photographs and recordings in their possession or at their premises, in a safe place. Such evidence may be kept at a safe location for a long time after the drug deal(s) to which they pertain are completed, if the location remains under the control of the trafficker.

g. Trafficers frequently maintain items necessary for weighing, packaging and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents and items to mask the odor of narcotics. Persons trafficking and using controlled substances frequently sell more than one type of controlled substance at any one time.

h. It is common for drug dealers to also be users of their product, and it is common for drug users to maintain paraphernalia associated with the use of controlled substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

i. Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

j. Traffickers often maintain weapons, including firearms and ammunition, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k. Traffickers often have false identification documents and identification documents in the names of others. Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, while continuing to use these assets and exercise dominion and control over them.

l. Drug trafficking is a cash business, often involving large amounts of cash at any one time, so drug traffickers often have money counters.

m. Persons involved in drug trafficking conceal in their residences caches of drugs, large amounts of currency, financial instructions, precious metals,

Affidavit of Special Agent McCarthy - 8
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

jewelry, and other items of value and/or proceeds of drug transactions as well as evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging in narcotics trafficking activities.

   o. Unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

   p. Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which fluctuates in size depending upon various factors, including the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

   q. Drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations, such as safe deposit boxes, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives or in other secure locations.

  17. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I also know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity, to include laundering their proceeds. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines

Affidavit of Special Agent McCarthy - 9
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  require.  Second, they can be easily carried to permit the user maximum flexibility in
2  meeting associates, avoiding police surveillance, and traveling to obtain or distribute
3  drugs.  Third, they can be passed between members of a drug conspiracy to allow
4  substitution when one member leaves the area temporarily.  Since cellular phone use
5  became widespread, every drug dealer I have contacted has used one or more cellular
6  telephones for his or her drug business.  I also know that it is common for drug
7  traffickers to retain in their possession phones that they previously used, but have
8  discontinued actively using, for their drug trafficking business.  These items may be kept
9  for months and months in a safe place controlled by the drug trafficker.  Based on my
10 training and experience, and my discussions with other experienced officers and agents
11 involved in drug investigations, the data maintained in a cellular telephone used by a
12 drug dealer is evidence of a crime or crimes.  This includes the following:
13         a.      The assigned number to the cellular telephone (known as the mobile
14 directory number or MDN), and the identifying telephone serial number (Electronic
15 Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile
16 Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are
17 important evidence because they reveal the service provider, allow us to obtain subscriber
18 information, and uniquely identify the telephone.  This information can be used to obtain
19 toll records, to identify contacts by this telephone with other cellular telephones used by
20 co-conspirators, to identify other telephones used by the same subscriber or purchased as
21 part of a package, and to confirm if the telephone was contacted by a cooperating source.
22         b.      The stored list of recent received, missed, and sent calls is important
23 evidence.  It identifies telephones recently in contact with the telephone user.  This is
24 valuable information in a drug investigation because it will identify telephones used by
25 other members of the organization, such as suppliers, distributors and customers, and it
26 confirms the date and time of contacts.  If the user is under surveillance, it identifies what
27 number he called during or around the time of a drug transaction or surveilled meeting.
28 Even if a contact involves a telephone user not part of the conspiracy, the information is
   helpful (and thus is evidence) because it leads to friends and associates of the user who

Affidavit of Special Agent McCarthy - 10
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

      c.     Stored text messages are important evidence, similar to stored numbers.  Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

      d.     Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering.  Evidence of the use of such applications can be obtained from smart phones, and is evidence of a smart phone user's efforts to avoid law enforcement detection.

      e.     Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user.  Pictures also identify associates likely to be members of the drug trafficking organization.  Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them.  Geocode information is typically the longitude and latitude where the photo was taken.  Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located

      f.     Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

  c. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

  d. Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use of such applications can be obtained from smart phones, and is evidence of a smart phone user's efforts to avoid law enforcement detection.

  e. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located

  f. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

Affidavit of Special Agent McCarthy - 11  
USAO No. 2019R00897

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

## CONCLUSION

18. Based on the information set forth herein, I respectfully submit there is probable cause to search the **black Mustang** and the **silver Audi** as further described in Attachment A, for evidence, fruits and instrumentalities, as further described in Attachment B, of the crimes of felon in possession of a firearm, distribution of, and possession with intent to distribute, controlled substances, and conspiracy to commit these offenses by Donald C. SCHOLOFF in violation of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Sections 841(a)(1), and 846.

_____
SCOTT McCARTHY, Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on the 27TH day of September, 2019.

_____
BRIAN A. TSUCHIDA
United States Chief Magistrate Judge

Affidavit of Special Agent McCarthy - 12
USAO No. 2019R00897

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970